**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MICHAEL LAWRENCE HARSHFIELD, | ) | Case No. 21-11947 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| _____ | ) | |
| BERT FRIEDMAN AND JULIE SOLOMON | ) | |
| | ) | |
| Plaintiffs, | ) | Adv. No. |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL LAWRENCE HARSHFIELD, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11**
**U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6)**

Now come Plaintiffs, Bert Friedman ("*Friedman*") and Julie Solomon ("*Solomon*") (collectively the "Plaintiffs"), creditors in the above-referenced case, by their counsel Goldstein & McClintock LLLP, and for their Complaint to Determine Dischargeability of Debt (the "*Complaint*") against Debtor/Defendant Michael Lawrence Harshfield (the "*Debtor*" or "*Harshfield*") pursuant to sections 523(a)(2)(A), 523(a)(4) and 523(a)(6) of title 11 of the United States Code (11 U.S.C. §§ 101 et seq., the "*Bankruptcy Code*"), state as follows:

**JURISDICTION AND VENUE**

1.      This is an adversary proceeding as defined by Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*").

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

3.      This matter is a core proceeding pursuant to 28 U.S.C. § 157 and Bankruptcy Rule 7008(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1409.

5.      The Debtor filed his bankruptcy case on October 20, 2021.

6.      January 14, 2021 was established by the Court as the deadline for the Debtor's creditors to file a Complaint to determine the dischargeability of the Debtor's debts pursuant to section 523 of the Bankruptcy Code.  This Complaint has thus been timely filed.

## FACTUAL ALLEGATIONS

### A.      The Parties

7.      The Plaintiffs are individuals that are married and reside in the state of California.

8.      The Debtor is an individual that resides at 509 N. Wells St., Unit 3, Chicago Illinois 60610.

### B.      The District Court Case

9.      The Plaintiffs previously filed a lawsuit in the District Court of Jefferson County Colorado against the Debtor, Blackline Land Management Group LLC ("*Blackline*"), a Colorado limited liability company, Venture Verde, LLC ("*Venture Verde*"), a Colorado limited liability company, Mathew Rhoades ("*Rhoades*"), Longbison, LLC ("*Longbison*"), an Arizona limited liability company, Venckus Real Estate LLC ("*Venckus Real Estate*"), a Colorado limited liability company and Rochelle Venckus ("*Venckus*") (the "*District Court Case*").  A copy of the Second Amended Complaint in the District Court Case is attached hereto as **Exhibit A**.

10.     At all times relevant, the Debtor is and was a manager of Blackline.

11.     Plaintiff, Friedman became acquainted with the Debtor in or around May 2017.

12.     During the course of Friedman and the Debtor becoming acquainted, the Debtor expressed to Friedman that he was managing a company that was operating in the cannabis industry—Blackline.

13.     In or around May 2017, the Debtor expressed to Friedman that the Debtor had secured patents relating to cannabis.

14.     In or around early 2018, the Debtor began to encourage Friedman to make an investment in Blackline.

15.     On or around September 9, 2018, the Debtor sent an email to Friedman regarding Plaintiffs' potential investment in Blackline. (the "*September 9 Email*").  In the September 9 Email, the Debtor stated that

"We are focused on building at least 10 facilities over the ensuing years that allow for medical grade, organically grown product with relationships to specific research institutes in California, Colorado and Massachusetts."

In that same email, the Debtor went on to state

"At least on paper we are spending $5MM to get the first facility built with an anticipated valuation upon completion of $15MM - not bad for the first build.  We are moving significant dirt within the month and will be done with the initial build by the end of 2018."

16.     Venture Verde is a Colorado limited liability company that is a subsidiary of Blackline.

17.     Venture Verde is purportedly responsible for Blackline's real estate and facility construction.

18.     On or around October 12, 2018, the Debtor sent an email further encouraging Friedman to invest in Blackline.  (the "*October 12 Email*").

19.     In the October 12 Email, the Debtor put Friedman in touch with Blackline's former Director of Investor Relations, Konni Harrison ("Harrison").

20.     On or around October 15, 2018, Harrison sent to Friedman two documents regarding a proposed investment in Blackline: a document titled BLMG Holdings Business Portfolio and a document titled Venture Verde Investor Presentation.

21.     The BLMG Holdings Business Portfolio makes numerous representations regarding Blackline and its subsidiaries, including Venture Verde:

   a.  The legal global cannabis market is poised for astounding growth of more than 1,000% over the next decade and is estimated to reach $140 billion by 2027.

   b.  [Blackline] provides solutions that no one else does — all under one roof.

   c.  [Blackline's] diverse portfolio of real estate, turnkey controlled environment facilities, land management including water reuse, off-grid alternative energy and patented intellectual property solutions helps clients to accelerate growth, remain compliant, enter new markets and overcome some of the cannabis industry's toughest challenges.

   d.  Venture Verde had broken ground on its first facility in Colorado in the third quarter of 2018.

   e.  ZenZone [one of Blackline's subsidiaries] is an intellectual property, licensing and trademark organization with compliance, efficiency, proprietary branded and genetic solutions for the cannabis industry.

   f.  Scale Momentum [one of Blackline's subsidiaries] is a multi-channel supply chain and advisory services organization providing win-win opportunities by connecting hemp-derivative suppliers and consumer product companies to not only do business, but scale.

22.     On or around November 13, 2018, Friedman sent the completed investor applications for the Plaintiffs to the Debtor and Harrison.

23.     Based on the representations regarding the business of Blackline provided by the Debtor, Friedman and his wife Solomon decided to make an investment in Blackline.

24.     On or around November 26, 2018, the Debtor sent Friedman wire instructions so that Plaintiffs could make a $150,000 investment in Blackline.

25.     On or around November 27, 2018, the Plaintiffs wired $145,000 to an account owned by Blackline.

26.     On or around November 28, 2018, Friedman emailed Harrison to, among other things, confirm that Blackline had received Plaintiffs' wire of $145,000.

27.     On or around November 29, 2018, Harrison responded to Friedman and, among other things, confirmed receipt of the wire.

28.     On or around December 3, 2018, Plaintiffs wired $5,000 to an account owned by Blackline.

29.     As a result of the two wire transfers, Plaintiffs' investment in Blackline totaled $150,000, half of which amount belonged to Friedman and half of which amount belonged to Solomon.

30.     Pursuant to the Blackline LLC Agreement, Blackline was to make a 5x redemption payment to the Plaintiffs, which is $750,000 based on their investment of $150,000.

31.     Pursuant to the terms of the LLC Agreement, Blackline is required to make this 5x redemption payment to Plaintiffs regardless of the financial performance of Blackline. Blackline is required to make this 5x redemption payment to Plaintiffs within 90 days after the last day of Blackline's 2023 fiscal year.

32.     Blackline has not made any redemption payments to the Plaintiffs, or any other payments.

33.     Based on communications with the Debtor and the other defendants obtained through discovery in the District Court Case, Plaintiffs have now learned the following:

   a. Blackline is insolvent.

   b. Blackline does not intend to honor its contractual obligation to make a $750,000 redemption payment to Plaintiffs.

   c. The two managers of Blackline, the Debtor and Rhoades, are not devoting their full efforts to Blackline.  Rather, they are merely following up operational activities where possible.

4

34.     Further, based on communications with defendants from the District Court Case, Blackline meeting minutes and notes, and documents provided by the Debtor and the other defendants from the District Court Case in discovery in the District Court Case, the Plaintiffs have also learned the following:

a.   Blackline currently has no projects moving forward.

b.   In September 2018, Blackline described its situation as "Cash beyond tight for month of September - no discretionary spending until we get the loan finalized."

c.   On or around September 4, 2018 and continuing through at least November 12, 2018, the Debtor and the other defendants from the District Court Case knew they could not yet break ground on their first facility in Colorado because they had not yet received the permits for the facility.

d.   On or around October 3, 2018, the Debtor and the other defendants from the District Court Case knew that their proposed press release relating to ground breaking on their first facility was on an "indefinite hold."

e.   On or around October 3, 2018, the Debtor and the other defendants from the District Court Case knew that the completion of the first facility in Colorado had been delayed until January 2019, at the earliest.

f.   On or around October 3, 2018, Blackline knew that it still did not have any proprietary products.

g.   On or around November 12, 2018, Blackline knew that its business plan was continuing to evolve and was not yet complete.

h.   On or around November 12, 2018, the Debtor and the other defendants from the District Court Case described Blackline's construction in Colorado as being on a "tight time frame that can only be determined when we finally shake loose the cash - GC will work with us to get us up and operational regardless of ultimate dollars."

i.   At the time Plaintiffs made their $150,000 investment in Blackline, the Debtor and the other defendants from the District Court Case did not intend to honor the obligation in Section III(J) of the Blackline LLC Agreement to make a 5x redemption payment on Plaintiffs' investment.

j.   To prevent Plaintiffs from collecting on any judgment in this case, the Debtor and other defendants in the District Court Case plan to "fold on the judgment" to try to prevent Plaintiffs from collecting their judgment.

k.   The Debtor and the other defendants in the District Court Case (approximately two and half years after Plaintiffs made their $150,000 investment in Blackline) rewrote the Blackline LLC Agreement to prevent Plaintiffs from recovering their investment and the promised return on their investment.

35.     In addition, as revealed by Blackline's May 13, 2019 meeting notes, the Debtor and the other Defendants from the District Court Case knew that they had been telling inconsistent stories to investors and that they did not know what Blackline's real plan was.

36.     Blackline's meeting notes from that date state,

"What are we saying to our investors {NOTE: we need to determine what real strategy is moving forward and commit - if pivoting to hemp then commit but there is some heavy lifting to do}."

Blackline's meeting notes from that date also state,

"What's the future look like {NOTE: seems as though we are focusing on Llamajauna - not a BLMG company, as well as hemp processing}."

Blackline's meeting notes from that date also state that the Debtor and the other defendants from the District Court Case

"have to work on one story and stick to that."

37.     Plaintiffs did not know, when they invested in Blackline, that the Debtor and the other defendants from the District Court Case had no real plan, that they did not know what their direction was, and that they did not intend to comply with Section III(J) of the Blackline LLC Agreement.

38.     The Debtor and the other defendants from the District Court Case concealed this information from Plaintiffs and represented the opposite to Plaintiffs—including that Venture Verde was already constructing its first facility, that Blackline was operating, and that Plaintiffs would receive a 5x redemption payment.

39.     The Debtor, as well as Rhoades and Venckus, who are the three voting members of Blackline, each signed the Blackline LLC Agreement, which contains the promised 5x redemption payment provision.

40.     The Debtor, as well as Rhoades and Venckus, participated in at least one meeting during which Plaintiffs' $150,000 investment in Blackline was discussed.

41.     The Debtor, as well as Rhoades and Venckus, have participated in communications about how to prevent Plaintiffs from collecting on any judgment by, including, but not limited to, "fold[ing] on the judgment."

42.     The Debtor, as well as Rhoades and Venckus, have rewritten the terms of the Blackline LLC Agreement (approximately two and half years after Plaintiffs made their $150,000 investment in Blackline), to prevent Plaintiffs from recovering their investment and the promised return on their investment.

**CAUSES OF ACTION**

**Count I**
**Violation of 11 U.S.C. § 523(a)(2)(A)**

The Plaintiffs, for Count I of their Complaint against the Debtor, states as follows:

43.     The Plaintiffs re-allege the preceding paragraphs 1 through 42 of their Complaint as if stated fully herein.

44.     Section 523(a)(2)(A) of the Bankruptcy Code provides that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . .—(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

(A)     false pretenses, a false representation, or actual fraud, other than a statement

respecting the debtor's or an insider's financial condition."

45.     In September and October, 2018, in an effort to induce the Plaintiffs to invest in Blackline, the Debtor made numerous representations regarding Blackline's business operations and plans.

46.     At all relevant times, the Debtor was acting as a fiduciary to Plaintiffs in his role as manager of Blackline.

47.     At all relevant times, the Debtor was also acting as a fiduciary to Plaintiffs due to the confidential relationship between the Debtor and Mr. Friedman relating to Plaintiffs' potential investment in Blackline.

48.     As a fiduciary to Plaintiffs, the Debtor was obligated to act in good faith and act in the best interest of Plaintiffs.

49.     As a fiduciary to Plaintiffs, the Debtor was obligated to communicate openly and honestly with Plaintiffs.

50.     The Debtor, breached his fiduciary duties to Plaintiffs by failing to disclose that he did not know what Blackline's real strategy or plan was.

51.     In addition, the Debtor breached his fiduciary duty to Plaintiffs by misrepresenting that:

a.  Venture Verde had broken ground on its first facility in Colorado in the third quarter of 2018.

b.  Blackline was already operating within the cannabis industry, including both the hemp portion and the marijuana portion of the cannabis industry.

7

52.     Contrary to his representations to the Plaintiffs, the Debtor described Blackline's financial condition in September 2018 as "cash beyond tight."

53.     Contrary to the Debtor's representations to the Plaintiffs, completion of Venture Verde's first facility in Colorado had been delayed.

54.     Contrary to the Debtor's representations to the Plaintiffs, Blackline did not have any proprietary products.

55.     Contrary to the Debtor's representations to the Plaintiffs, Blackline's business plan was continuing to evolve and was not yet complete.

56.     Contrary to the Debtor's representations to the Plaintiffs, Blackline's construction schedule was not determined at the time the Debtor sought the Plaintiff's investment and would only be determined when defendants in the District Court Case "finally shake loose the cash."

57.     Contrary to the Debtor's representations to the Plaintiffs, the Debtor did not know what Blackline's real strategy was.

58.     Contrary to the Debtor's representations to the Plaintiffs, the Debtor did not know what Blackline's focus was.

59.     Contrary to the Debtor's representations to the Plaintiffs, the defendants in the District Court Case had never had any paying clients.

60.     Contrary to the Debtor's representations to the Plaintiffs, the Debtor and the defendants in the District Court Case did not intend to honor the 5x redemption payment provision.

61.     The Debtor's actions were not undertaken in good faith nor were they in the best interest of Plaintiffs.

62.     The Debtor's false representations regarding the business of Blackline and the defendants in the District Court Case were made with the intention to deceive the Plaintiffs to invest in Blackline.

63.     The Debtor knew the significance of the representations regarding the business of Blackline and the other defendants in the District Court Case.

64.     The Plaintiffs justifiably relied on the representations of the Debtor.

65.     If the Debtor's false representations had not been made, the Plaintiffs would not have invested in Blackline.

66.     In reliance upon these false representations made by the Debtor, the Plaintiffs made the $150,000 investment in Blackline.

67.     The Debtors false representations regarding the business of Blackline and the defendants in the District Court Case and breach of his fiduciary duty to the Plaintiffs has caused Plaintiffs to incur damages in an amount to be proven at trial, in an amount of not less than $150,000.

68.     As the manager of Blackline, who obtained money from the Plaintiff's investment through fraud, the Debtor is not protected from individual liability by any corporate form.  As a result, the Debtor's debt to the Plaintiffs is non-dischargeable pursuant to section 523(a)(2)(A) of the Bankruptcy Code.

**WHEREFORE**, for the reasons stated herein, the Plaintiffs respectfully requests that the

Court determine that the Debtor's debt to the Plaintiffs, in an amount to be proven at trial, but in

an amount of not less than $150,000, is non-dischargeable pursuant to section 523(a)(2)(A) of

the Bankruptcy Code, for attorneys' fees and costs, and for all other relief that the Court deems

just and proper.

### Count II
### Violation of 11 U.S.C. § 523(a)(4)

69.     The Plaintiffs re-allege the preceding paragraphs 1 through 68 of their Complaint as if stated fully herein.

70.     Section 523(a)(4) of the Bankruptcy Code provides that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . .—(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

71.     In September and October, 2018, in an effort to induce the Plaintiffs to invest in Blackline, the Debtor made numerous misrepresentations regarding Blackline's business operations and plans.

72.     At all relevant times, the Debtor was acting as a fiduciary to Plaintiffs in his role as manager of Blackline.

73.     At all relevant times, the Debtor was also acting as a fiduciary to Plaintiffs due to the confidential relationship between the Debtor and Mr. Friedman relating to Plaintiffs' potential investment in Blackline.

74.     As a  fiduciary to Plaintiffs, the Debtor was obligated to act in good faith and act in the best interest of Plaintiffs.

75.     As a fiduciary to Plaintiffs, the Debtor was obligated to communicate openly and honestly with Plaintiffs.

76.     The Debtor breached his fiduciary duties to Plaintiffs by failing to disclose that he did not know what Blackline's real strategy or plan was.

77.     In addition, the Debtor breached his fiduciary duty to Plaintiffs by misrepresenting that:

   a. Venture Verde had broken ground on its first facility in Colorado in the third quarter of 2018; and

   b. Blackline was already operating within the cannabis industry, including both the hemp portion and the marijuana portion of the cannabis industry.

78.     Contrary to his representations to the Plaintiffs, the Debtor described Blackline's financial condition in September 2018 as "cash beyond tight."

79.     Contrary to the Debtor's representations to the Plaintiffs, completion of Venture Verde's first facility in Colorado had been delayed.

80.     Contrary to the Debtor's representations to the Plaintiffs, Blackline did not have any proprietary products.

81.     Contrary to the Debtor's representations to the Plaintiffs, Blackline's business plan was continuing to evolve and was not yet complete.

82.     Contrary to the Debtor's representations to the Plaintiffs, Blackline's construction schedule was not determined and would only be determined when the defendants in the District Court Case "finally shake loose the cash."

83.     Contrary to the Debtor's representations to the Plaintiffs, the Debtor did not know what Blackline's real strategy was.

84.     Contrary to the Debtor's representations to the Plaintiffs, the Debtor did not know what Blackline's focus was.

85.     Contrary to the Debtor's representations to the Plaintiffs, the defendants in the District Court Case had never had any paying clients.

86.     Contrary to the Debtor's representations to the Plaintiffs, the Debtor and the defendants in the District Court Case did not intend to honor the 5x redemption payment provision.

87.     The Debtor's actions were not undertaken in good faith nor were they in the best interest of Plaintiffs.

88.     The Debtor's false representations regarding the business of Blackline and the defendants in the District Court Case were made with the intention to induce the Plaintiffs to invest in Blackline.

89.     The Debtor knew the significance of the representations regarding the business of Blackline and the defendants in the District Court Case.

90.     The Debtor's false representations were fraudulent.

91.     The Plaintiffs justifiably relied on the representations of the Debtor.

92.     If the Debtor's false representations had not been made, the Plaintiffs would not have invested in Blackline.

93.     In reliance upon these false representations made by the Debtor, the Plaintiffs made the $150,000 investment in Blackline.

94.      The Debtors false representations regarding the business of Blackline and the defendants in the District Court Case and breach of his fiduciary duty to the Plaintiffs has caused Plaintiffs to incur damages in an amount to be proven at trial, in an amount of not less than $150,000.00.

95.     As the manager of Blackline, who obtained money from the Plaintiff's investment through fraud, the Debtor is not protected from individual liability by any corporate form.  As a result, the Debtor's debt to the Plaintiffs is non-dischargeable pursuant to section 523(a)(4)(A) of the Bankruptcy Code

**WHEREFORE**, for the reasons stated herein, the Plaintiffs respectfully requests that the Court determine that the Debtor's debt to the Plaintiffs, in an amount to be proven at trial, but in an amount of not less than $150,000, is non-dischargeable pursuant to section 523(a)(4) of the Bankruptcy Code, for attorneys' fees and costs, and for all other relief that the Court deems just and proper.

### Count III
### Violation of 11 U.S.C. § 523(a)(4)
### (Securities Fraud)

The Plaintiffs, for Count III of their Complaint against the Debtor, state as follows:

96.     The Plaintiffs re-allege the preceding paragraphs 1 through 95 of their Complaint as if stated fully herein.

97.     Section 523(a)(4) of the Bankruptcy Code provides that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . .—(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

98.     Plaintiffs are purchasers of Blackline securities.  More particularly, Plaintiffs paid $150,000 for a 1% stake in Blackline.

99.      The investment Plaintiffs made in Blackline was an investment in securities.

100.     The Debtor as a manager of Blackline failed to register the securities sold to Plaintiffs with either the Securities and Exchange Commission or the Colorado Division of Securities.

101.     The Debtor induced the Plaintiffs to purchase securities in Blackline recklessly, knowingly, or with an intent to defraud Plaintiffs in violation of C.R.S. § 11-51-501(1).  This is clear, in part, because various documents, including, but not limited to, Blackline meeting minutes, Blackline meeting notes, and communications between the defendants in the District Court Case, demonstrate that the information about Blackline and its operations that the Debtor was providing to Friedman was false.

102.     In addition, the Plaintiff were promised a 5x redemption payment in order to induce Plaintiffs to invest. But the Debtor and the defendants in the District Court Case did not intend to honor the promise regarding the 5x redemption payment. This is the essence of securities fraud—promising someone a lucrative investment opportunity and a large future payout in order to induce investment.

103.     The Debtor's conduct was in connection with the sale of the securities to Plaintiffs.  More particularly, the Debtor made the misrepresentations and concealed or failed to disclose the information about Blackline in the context of communications with Plaintiffs regarding their potential purchase of Blackline securities.

104.     The Plaintiffs justifiably relied on the representations of the Debtor.

105.     Plaintiffs relied on the Debtor's conduct to their detriment.  More particularly, Plaintiffs invested $150,000 in an entity that the defendants in the District Court Case now acknowledge is insolvent.

106.     The Debtor's conduct caused Plaintiffs' damages, in an amount to be proven at trial, in an amount of not less than $150,000.

**WHEREFORE**, for the reasons stated herein, the Plaintiffs respectfully requests that the

Court determine that the Debtor's debt to the Plaintiffs, in an amount to be proven at trial, but in

an amount of not less than $150,000, is non-dischargeable pursuant to section 523(a)(4) of the

Bankruptcy Code, for attorneys' fees and costs, and for all other relief that the Court deems just

and proper.

### Count IV
### Violation of 11 U.S.C. § 523(a)(6)

107.     The Plaintiffs re-allege the preceding paragraphs 1 through 106 of their Complaint as if stated fully herein.

108.    Section 523(a)(6) of the Bankruptcy Code provides that "[a] discharge under section…727 of this title does not discharge an individual debtor from any debt – . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

109.    By making false representations to induce the Plaintiffs to pay $150,000, the Debtor's conduct caused a willful and malicious injury to the Plaintiffs.

110.    After fraudulently obtaining the investment, the Debtor and the defendants in the District Court Case did not comply with their obligations regarding the Blackline LLC Agreement regarding the repayment of the Plaintiffs investment at 5x redemption.

111.    At the time he made the false representations to the Plaintiffs, the Debtor knew that this willful and malicious conduct would cause the Plaintiffs a substantial injury.  The Debtor knew that, but for the false representations, the Plaintiffs would not have made the investment in Blackline.

112.    The Debtor knew that since Blackline was insolvent, the Plaintiffs would be deprived of any return on their investment in Blackline.

113.    The Debtor intended to harm the Plaintiffs by depriving them of $150,000 based on his false representations.

114.    The totality of these false representations and omissions caused a willful and malicious injury to the Plaintiffs.  If the Plaintiffs had known of the intention to act in this malicious manner toward their interests – including that the representations made by the Debtor were false – the Plaintiffs would not have made the investment.

115.    As the manager of Blackline who obtained money for Blackline through fraud, the Debtor is not protected from individual liability by any corporate form.  As a result, the Debtor's debt to the Plaintiffs is non-dischargeable pursuant to section 523(a)(6) of the Bankruptcy Code.

**WHEREFORE**, for the reasons stated herein, the Plaintiffs respectfully requests that the

Court determine that the Debtor's debt to the Plaintiffs, in an amount to be proven at trial, but in

an amount of not less than $150,000, is non-dischargeable pursuant to section 523(a)(6) of the

Bankruptcy Code, for attorneys' fees and costs, and for all other relief that the Court deems just

and proper.

DATED this 13th day of January, 2022.

Bert Friedman and Julie Solomon


By:   /s/ Jeffrey C. Dan

Jeffrey C. Dan (Atty. No. 6242750)
GOLDSTEIN & MCCLINTOCK LLLP
111 W. Washington,
Suite 1221
Chicago, Illinois 60602
P: 312-337-7700
F: 312-277-2305
*Counsel for Plaintiffs*
